## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORGAN BURNS and ISMAEL DOMINGUEZ, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEXTRA USA CORPORATION d/b/a BACÀN, MASSIMO CERRELLI, VALENTINA ROSTICCI, and ALESSIO DI GIUSEPPE, in their individual and professional capacities,<br><br>Defendants. | Case No.: 1:25-cv-02688 (CBA)(MMH)<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Morgan Burns ("Burns") and Ismael Dominguez ("Dominguez") (together, "Plaintiffs"), by and through their undersigned counsel, Faruqi & Faruqi, LLP, and on behalf of themselves and others similarly situated, hereby allege as follows against Defendants Nextra USA Corporation d/b/a Bacàn ("Bacàn" or the "Restaurant"), Massimo Cerrelli ("Cerrelli"), Valentina Rosticci ("Rosticci"), and Alessio Di Giuseppe ("Di Giuseppe" and collectively with Cerrelli and Rosticci, "Individual Defendants") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

1.      Defendants jointly own and operate an Italian bistro in Brooklyn, New York, doing business under the name, "Bacàn."

2.      Defendants engage in a common, willful, and deliberate policy and practice of denying Plaintiffs and other similarly situated Restaurant Employees (defined *infra* at ¶ 73) overtime wages and spread of hours pay, in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

3.      In fact, Defendants engage in a pattern and practice of failing to pay Restaurant

Employees at all for some of the work they perform.

4.     Defendants also never provided Restaurant Employees who receive tips with Notices of Tip Credit; thereby, invalidating any tip credit against minimum wages.

5.     Throughout the relevant time period, Defendants also engaged in a willful and deliberate policy and practice of consistently paying Restaurant Employees late, sometimes by several weeks after their regularly scheduled pay days.

6.     Defendants never furnished Restaurant Employees with any Notices of Pay Rate or accurate wage statements, as required by the NYLL.

7.     Additionally, upon information and belief, Defendants misappropriated tips by using the tips earned by Restaurant Employees to cover Defendants' operational expenses.

8.     Further, Defendants improperly deduct fees from Restaurant Employees' wages to cover the fees associated with wiring the payment of wages to their bank accounts.

9.     Plaintiffs' claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated Plaintiffs employed by Defendants at any time during the full statute of limitations period.

10.     Plaintiffs' claims are also brought, in part, under the NYLL, and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Restaurant Employees employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

12.     This Court also has subject matter jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

13.     The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under State law pursuant to 28 U.S.C. § 1367.

14.     Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

15.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### A.    Morgan Burns

16.      Burns is a resident of Brooklyn, New York, and Defendants employed her from in or around April 2024 through on or around March 30, 2025.

17.     At all relevant times, Burns was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### B.    Ismael Dominguez

18.      Dominguez is a resident of Brooklyn, New York, and Defendants employed him from on or around mid-December 2024, through the present.

19.     At all relevant times, Dominguez was and is an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### C.    Defendant Nextra USA Corporation d/b/a Bacàn

20.     Bacàn is a domestic business corporation with its principal place of business located at 79 Grand Street, Brooklyn, New York 11249, and is jointly managed by Individual Defendants.

21.     At all relevant times, Bacàn controlled and directed the terms of employment and

compensation of Plaintiffs and all others similarly situated.

22.     At all relevant times, Bacàn established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

23.     At all relevant times, Bacàn maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

24.     At all relevant times, Bacàn was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

25.     At all relevant times, Bacàn was and continues to be an "enterprise engaged in interstate commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

26.     At all relevant times, Bacàn engaged in interstate commerce by using equipment and material produced outside of New York or moved in interstate commerce, and had employees handle, sell, or otherwise work on goods or materials, such as food and kitchen supplies, that have been moved in or produced for commerce.

27.     By way of example, Plaintiffs as well as other Restaurant Employees were provided food products and other supplies to handle and use that originated from outside of the State of New York and/or moved in interstate commerce to perform their work.

28.     Upon information and belief, at all relevant times, Bacàn had an annual gross volume of sales in excess of $500,000.00.

**D.    Defendant Massimo Cerrelli**

29.     Cerrelli is, upon information and belief, a resident of Italy.

30.     Cerrelli manages, owns, and operates Bacàn.

4

31.    Cerrelli's actual place of business is located at the same address as Bacàn, at 79 Grand Street, Brooklyn, New York 11249, where he managed Bacàn remotely in concert with other Individual Defendants.

32.    Cerrelli is listed as one of the principal officers and as one of the ten largest shareholders of Bacàn on documentation filed with the New York State Liquor Authority.

33.    At all relevant times, Cerrelli, in concert with other Individual Defendants, controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

34.    As but one example, Cerrelli, determined and informed Plaintiffs and other similarly situated Restaurant Employees directly about what their compensation and working hours were to be. *See* Exhibit A.

35.    As another example, Cerrelli, in concert with other Individual Defendants, set when Restaurant Employees would start their shifts. *See* Exhibit B.

36.    At all relevant times, Cerrelli maintained and exercised his power to hire, fire, promote, and discipline Plaintiffs and all others similarly situated.

37.    As but one example, Cerrelli informed Plaintiffs and similarly situated Restaurant Employees that if they did not agree to the scheduling and pay practices that he and other managers (including Rosticci and Di Giuseppe) had instituted, they would be terminated. *See* Exhibit A.

38.    As another example, Cerrelli, in concert with other Individual Defendants, offered Burns a promotion. *See* Exhibit C.

39.    At all relevant times, Cerrelli maintained control, oversight, and direction of Plaintiffs and all similarly situated persons, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to

Plaintiffs and all others similarly situated.

40.     As but one example, Cerrelli directed inventory restocking directly in concert with Rosticci, Di Giuseppe, and Bacàn's kitchen manager. *See* Exhibit A.

41.     At all relevant times, Cerrelli determined Plaintiffs' and all others' similarly situated rates and method of payments.

42.     As but one example, Cerrelli set and informed Dominguez directly about his compensation and working hours.

43.     At all relevant times, Cerrelli was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

**E.     Defendant Valentina Rosticci**

44.     Rosticci is, upon information and belief, a resident of Italy.

45.     Rosticci manages, owns, and operates Bacàn.

46.     Rosticci's actual place of business is located at the same address as Bacàn, at 79 Grand Street, Brooklyn, New York 11249, where she managed Bacàn remotely in concert with other Individual Defendants.

47.     Rosticci holds herself out as the Chief Executive Officer of Bacàn and was described by Cerrelli as "the General Manager." *See* Exhibit A at 2.

48.     At all relevant times, Rosticci, in concert with other Individual Defendants, controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

49.     As but one example, Rosticci, in concert with other Individual Defendants, determined and provided Dominguez and other similarly situated Restaurant Employees with their work schedules. *See* Exhibits D & E.

50.     As another example, Rosticci, in concert with other Individual Defendants, set Restaurant Employees' pay. *See* Exhibit E.

51.     At all relevant times, Rosticci maintained and exercised her power to hire, fire, promote, and discipline Plaintiffs and all others similarly situated.

52.     Indeed, Rosticci communicated with Plaintiffs directly concerning her ongoing efforts to hire new employees for Defendants. *See* Exhibit A.

53.     As another example, Rosticci, in concert with other Individual Defendants, offered Burns a promotion. *See* Exhibit C.

54.     At all relevant times, Rosticci maintained control, oversight, and direction of Plaintiffs and all similarly situated persons, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

55.     As but one example, Rosticci directed inventory restocking directly in concert with Cerrelli, Di Giuseppe, and Bacàn's kitchen manager. *See* Exhibit A.

56.     At all relevant times, Rosticci determined Plaintiffs' and all others' similarly situated rates and method of payments.

57.     As but one example, Rosticci set and informed Dominguez of his compensation and working hours and personally directed how much Restaurant Employees would be paid. *See* Exhibit E. At all relevant times, Rosticci was an "employer" of Plaintiffs, and all others similarly situated within the meaning of all applicable statutes and regulations.

## F.     Defendant Alessio Di Giuseppe

58.     Di Giuseppe is, upon information and belief, a resident of Italy.

59.     Di Giuseppe manages, owns, and operates Bacàn.

60.    Di Giuseppe's actual place of business is located at the same address as Bacàn, at 79 Grand Street, Brooklyn, New York 11249, where he managed Bacàn remotely in concert with other Individual Defendants.

61.    Upon information and belief, Di Giuseppe is a principal officer of Bacàn.

62.    At all relevant times, Di Giuseppe, in concert with other Individual Defendants, controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

63.    As but one example, Di Giuseppe held meetings with Plaintiffs and similarly situated Restaurant Employees to discuss and direct how they would operate the restaurant, what their schedules would be, and how they were to serve customers. *See* Exhibit E.

64.    At all relevant times, Di Giuseppe maintained and exercised his power to hire, fire, promote, and discipline Plaintiffs and all others similarly situated.

65.    As but one example, Di Giuseppe, along with Rosticci, interviewed Burns in order to ostensibly "rehire" her for her position as a server and bartender and consider her for promotion.

66.    As another example, Di Giuseppe informed Dominguez that if he did not respond to Cerrelli's directions, he would be terminated. *See* Exhibit A.

67.    At all relevant times, Di Giuseppe maintained control, oversight, and direction of Plaintiffs and all similarly situated persons, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

68.    As but one example, Rosticci directed inventory restocking directly in concert with Cerrelli, Di Giuseppe, and Bacàn's kitchen manager. *See* Exhibit A.

69.    At all relevant times, Di Giuseppe, in concert with other Individual Defendants,

determined Plaintiffs' and all others' similarly situated rates and method of payments.

70.    At all relevant times, Di Giuseppe was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

## FACTS

### A.    Background

71.    As detailed above, Defendants own and operate an Italian bistro in Brooklyn, New York, named "Bacàn."

72.    Defendants employ a staff of approximately 5 to 20 employees at any given time.

73.    Restaurant Employees hold various titles, including, *inter alia*: (i) Chef; (ii) Sous Chef; (iii) Food Preparer; (iv) Cook; (v) Dishwasher; (vi) Porter; (vii) Server; (viii) Bartender; and (ix) Runner/Busser (collectively, "Restaurant Employees").

### B.    Failure to Timely Pay Wages

74.    Defendants engage in a pattern and practice of delaying payment of wages to Plaintiffs and all other Restaurant Employees beyond their regularly scheduled paydays.

75.    Plaintiffs' and all other Restaurant Employees' pay periods cover a 7-day timeframe spanning from Monday to Sunday, with their regularly scheduled pay day being the following Monday.

76.    However, Defendants routinely fail to make Plaintiffs and all other Restaurant Employees' wages available until several days, and often several weeks, after their regularly scheduled pay day.

77.    In fact, on or around March 13, 2025, Restaurant Employees complained to Rosticci regarding the consistently late payment of their wages.

78.    In response, Rosticci notified Restaurant Employees in a group text message, *inter alia*, that the Restaurant "first need[ed] to balance the outstanding payments before being able to

pay salaries on time."

79.    As a result of Defendants' pattern and practice of paying Plaintiffs and all other Restaurant Employees late, Plaintiffs and other Restaurant Employees have suffered concrete harm.

80.    Specifically, Defendants prevented Plaintiffs and other Restaurant Employees from, *inter alia*: (i) being able to pay for necessities, such as food, utilities, or medical expenses; (ii) being able to pay rent and credit card bills on time; and (iii) receiving the time value of their wages that Defendants illegally delayed.

**C.    <u>Failure to Pay Minimum Wages and All Earned Wages, and Defendants' Invalid Tip Credit</u>**

81.    Defendants engage in a common pattern and practice of deliberately denying Restaurant Employees minimum wages owed.

82.    Defendants systematically deny Restaurant Employees their wages in several ways.

83.    First, Defendants are required to provide Burns, and other tipped Restaurant Employees with a "Notice of Tip Credit" before applying a tip credit against their minimum wage obligations to such tipped employees.

84.    The Notice of Tip Credit must state each tipped employee's: (i) hourly rate; (ii) overtime rate; (iii) amount of the tip credit; (iv) regular pay day; and (v) extra pay that is required if tips are insufficient to bring them up to the statutory minimum wage.

85.    Defendants never provided Burns, nor other tipped Restaurant Employees with a Notice of Tip Credit.

86.    As such, any tip credit that Defendants may have claimed is invalidated and Burns, and other tipped Restaurant Employees are entitled to recover the difference between the hourly rates they were paid and the applicable State minimum wage rates they should have been paid

(plus overtime on such rates) for the hours they worked.

87.     The tip-credit is further invalidated because, upon information and belief, Defendants used portions of tipped Restaurant Employees' tips to cover debts and operating expenses, such as to purchase food and supplies.

88.     Defendants also agree to pay Restaurant Employees at established hourly or weekly rates.

89.     However, Defendants sometimes fail to pay any wages at all to Restaurant Employees for work they perform.

**D.      Failure to Pay Overtime Wages and Spread of Hours Pay**

90.     Defendants engaged in a pattern and practice of deliberately denying Restaurant Employees overtime wages.

91.     Defendants maintained an intentional practice of failing to pay Dominguez, and other Restaurant Employees at a rate of one and one-half times their regular rate or the minimum wage rate for any of their hours worked in excess of 40 hours in a workweek.

92.     Additionally, Defendants never provided Plaintiffs and all other Restaurant Employees with "spread of hours pay"—*i.e.*, an additional hour of pay at the applicable State minimum wage rate on each day where the length of interval between the beginning and end of an employees' workday exceeds 10 hours.

**E.      Unlawful Deductions for Wiring Fees**

93.     Defendants have acted willfully and deliberately in maintaining an intentional practice of improperly deducting wages from Restaurant Employees.

94.     Specifically, Defendants deduct $15.00 from Restaurant Employees' wages to cover the fees associated with wiring the payment of wages to their bank accounts.

**F.**    **Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

95.    The NYLL requires that employers, including Defendants, provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate (see NYLL § 195(1)(a)).

96.    Throughout the statutory period, Defendants never provided Restaurant Employees with Notices of Pay Rate.

97.    The NYLL also requires that employers, including Defendants, provide Restaurant Employees with accurate wage statements with each payment of wages.

98.    Defendants never furnished Restaurant Employees with accurate wage statements during the statutory period.

99.    As a result of Defendants' failure to provide Restaurant Employees with Notices of Pay Rate and accurate wage statements with each payment of wages, Plaintiffs and other Restaurant Employees have suffered concrete harm.

100.    Specifically, Plaintiffs and other Restaurant Employees have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves by taking appropriate action to obtain the payments due to them.

101.    Defendants' failure to provide Plaintiffs and other Restaurant Employees Notices

of Pay Rate and accurate wage statements not only hindered Plaintiffs from realizing their rights at the time of payment, but also injured Plaintiffs by enabling the actual underpayment and untimely payment of their wages, necessitating this action.

## G.    **Plaintiff Morgan Burns**

### i.    **Background**

102.    Burns worked at the Restaurant as a Server and Bartender, from in or around April 2024 through on or around March 30, 2025.

103.    Burns's duties as a Server and Bartender included, *inter alia*: (i) preparing the bar for service; (ii) serving and making drinks for the Restaurant's patrons; (iii) serving food; (iv) bussing and cleaning tables; (v) processing the Restaurant's patrons' bills; and (vi) cleaning the bar and restaurant after service.

104.    From in or around April 2024 through on or around December 8, 2024, Burns typically worked five days a week, Monday through Friday, from approximately 9:00 a.m. until approximately 4:00 p.m. or 5:00 p.m.

105.    During this time, Burns consistently worked approximately 35 to 40 hours per week.

106.    From in or around December 2024 through on or around March 30, 2025, Burns typically worked two to four days per week from: (i) approximately 5:00 p.m. until approximately 11:00 p.m. or 12:00 a.m. on weekdays; (ii) approximately 11:00 a.m. until between 9:00 p.m. to 12:00 a.m. on Saturdays; and (iii) approximately 11:00 a.m. until between 5:00 p.m. to 7:00 p.m. on Sundays.

107.    During this time, Burns consistently worked approximately 11 to 25 hours per week.

### ii.     Wage Violations

108.    From in or around April 2024 through on or around December 29, 2024, Defendants paid Burns $20.00 per hour and $30.00 per overtime hour worked.

109.     On or around January 6, 2025, Defendants changed Burns's compensation and began paying her $16.00 per hour for work performed between 11:00 a.m. to 4:00 p.m. on Saturdays and Sundays and $11.00 per hour for work performed after 4:00 p.m. on Saturdays and Sundays and all hours worked on the weekdays.

110.    However, Defendants never provided Burns with a Notice of Tip Credit that met the requirements of the NYLL, thereby invalidating any tip credit Defendants may have attempted to claim against their minimum wage obligations to Burns.

111.    Moreover, throughout the statutory period, Defendants never paid Burns spread of hours compensation when she worked more than 10 hours per day.

112.    Additionally, beginning in or around November 2024 through on or around March 30, 2025, Defendants failed to timely pay Burns.

113.    Throughout the statutory period, Defendants paid Burns in pay periods spanning a 7-day timeframe from Monday to Sunday.

114.    Defendants designated the following Monday as Burns's regularly scheduled pay day.

115.    However, Defendants routinely failed to pay Burns all of her wages until days, and even weeks, after her regularly scheduled pay day.

116.    By way of example, from on or around January 13, 2025 through on or around January 19, 2025, Burns worked approximately 25 hours.

117.    However, Defendants did not pay Burns for the 25 hours she worked until on or

around February 7, 2025—approximately two weeks days after her regularly scheduled pay day.

118.    In another example, from on or around March 3, 2025 through on or around March 9, 2025, Burns worked approximately 21.66 hours.

119.    Similarly, Defendants failed to pay Burns for these 21.66 hours she worked until on or around March 28, 2025—also approximately two weeks after her regularly scheduled pay day.

120.    As a result of Defendants' pattern and practice of the late payment of wages, Burns suffered concrete harm.

121.    Specifically, Burns was unable to: (i) pay for necessities, such as food, utilities, and medical expenses; (ii) pay rent and credit card bills on time; and (iii) receive the time value of her wages.

122.    Further, on several occasions, Defendants deducted portions of Burns's paycheck, citing fees associated with wiring her wages to her bank account.

123.    For example, on or around July 22, 2024 and then again on or around October 21, 2024, Defendants deducted approximately $15.00 from Burns's wages for fees associated with wiring her wages to her bank account which Defendants never reimbursed.

124.    Defendants never provided Burns with a Notice of Pay Rate.

125.    Defendants never provided Burns with accurate wage statements.

126.    As a result of Defendants' failure to provide Burns with a Notice of Pay Rate or accurate wage statements with each payment of her wages, Defendants prevented Burns from, *inter alia*: (i) realizing her true hours worked; (ii) realizing that Defendants underpaid her; and (iii) taking appropriate action to obtain the payments due to her.

127.    Throughout the relevant period, Burns had conversations with other Restaurant

Employees who confirmed that they were never provided Notices of Tip Credit, never paid spread of hours pay, had money deducted from their wages for wiring fees, and that Defendants also failed to timely pay their wages.

128.    These employees also confirmed that Defendants failed to provide them with Notices of Pay Rate and accurate wage statements.

## H.    Plaintiff Ismael Dominguez

### i.    Background

129.    Dominguez has worked for Defendants as a Chef from on or around mid-December 2024 to the present.

130.    Dominguez's duties as a Chef include, *inter alia*: (i) preparing and cooking dishes according to Defendants' instructions; (ii) plating dishes; (iii) cleaning the kitchen after food service; and (iv) ordering food and other kitchen supplies.

### ii.    Wage Violations

131.    Upon Dominguez's hire through approximately early-January 2025, Dominguez and Defendants agreed that he would be paid $1,500.00 for working 40 hours per week.

132.    In or around mid-January 2025 through in or around mid-March 2025, Defendants decreased Dominguez's wages to $1,200.00 for working 40 hours per week.

133.    Later, in or around late-March 2025, Defendants increased Dominguez's wages to $1,400 for working 40 hours per week.

134.    While Dominguez agreed to be paid $1,500, and later $1,200 and $1,400, for 40 hours of work, he consistently worked more than 40 hours per week and was paid nothing at all for those additional hours.

135.    From on or around mid-December 2024 through in or around mid-March 2025,

Dominguez typically worked three days during the week, except for Tuesdays, from approximately 3:00 p.m. until approximately 10:30 p.m.

136.    Additionally, Dominguez typically worked on Saturdays and Sundays, from approximately 10:00 a.m. until approximately 10:30 p.m.

137.    From in or around late-March 2025 through in or around late-April 2025, Dominguez typically worked four days during the week, except for Mondays, from approximately 4:00 p.m. until approximately 10:30 p.m.

138.    Additionally, during this time, Dominguez typically worked on Saturdays, from approximately 10:00 a.m. until approximately 10:30 p.m., and on Sundays from approximately 10:00 a.m. until approximately 6:00 p.m.

139.    From on or around mid-December 2024 through in or around late-April 2025, Dominguez consistently worked approximately 45 to 47.5 hours per week and was paid ***nothing at all*** for the additional 5 to 7.5 hours of overtime he worked each week.

140.    Defendants also never paid Dominguez spread of hours pay for shifts he worked that were longer than 10 hours.

141.    By way of example, from on or around January 6, 2025 through on or around January 12, 2025, Dominguez worked three 7.50-hour shifts and two 12.50-hour shifts for a total of 47.5 hours that week.

142.    However, Defendants only paid Dominguez for 40 hours of work for that week, eventually paying Dominguez $1,500.00 albeit long after his regularly scheduled pay day (as further described below).

143.    Indeed, Defendants paid Dominguez ***nothing at all*** for the additional 7.5 hours he worked, paid him ***nothing*** in overtime wages, and failed to pay him any spread of hours

compensation for the two 12.5 hour shifts he worked that week.

144.    For this week alone, Defendants failed to pay Dominguez an additional $421.88 in overtime wages[1] and $33.00 in spread of hours pay[2]—for a total of $454.88 in unpaid wages.

145.    Beginning in or around January 2025 through the present, Defendants also failed to timely pay Dominguez his wages.

146.    Throughout the statutory period, Defendants paid Dominguez in pay periods spanning a 7-day timeframe from Monday to Sunday.

147.    Defendants designated the following Monday as Dominguez's regularly schedule pay day.

148.    However, Defendants routinely failed to pay Dominguez all his wages until long after his regularly scheduled pay day.

149.    By way of example, as noted above, Dominguez worked 47.5 hours during the workweek ending January 12, 2025; but was only paid a portion of his wages (only $649.00) on January 21, 2025—which was after his regularly scheduled pay day.

150.    Defendants then paid Dominguez the remaining portion of the $1,500 for that workweek on January 28, 2025, approximately 8 days after his regularly scheduled pay day.

151.    To this day, Defendants have still not paid Dominguez for all of the hours he worked at the Restaurant.

152.    For example, Defendants have still not paid Dominguez **anything at all** for the 46.5 hours of work he performed during the work week ending April 6, 2025.

153.    As a result of Defendants' pattern and practice of paying Dominguez late (and in

---

[1] Dominguez's regular rate of pay: $1,500 / 40 hours = $37.50 per hour.
  Overtime rate: $37.50 x 1.5 = $56.25.
  7.5 overtime hours x $56.25 = $421.88 in unpaid overtime wages.

[2] 2 hours x $16.50 (minimum wage) = $33.00 spread of hours.

some cases, not at all), Dominguez suffered concrete harm.

154.    Specifically, Dominguez was unable to: (i) pay for necessities, such as food, utilities, and medical expenses; (ii) pay rent and credit card bills on time; and (iii) receive the time value of his wages.

155.    Defendants never provided Dominguez with a Notice of Pay Rate.

156.    Defendants never provided Dominguez with accurate wage statements. In fact, Defendants *never* provided Dominguez with any wage statements at all.

157.    As a result of Defendants' failure to provide Dominguez with a Notice of Pay Rate or accurate wage statements with each payment of his wages, Defendants prevented Dominguez from, *inter alia*: (i) realizing his true hours worked; (ii) realizing that he was underpaid; and (iii) taking appropriate action to obtain the payments due to him.

158.    Throughout the relevant period, Dominguez had conversations with other Restaurant Employees who confirmed that they were not paid one and one-half times their regular rates of pay for any hours worked in excess of 40 hours in a workweek, were never paid spread of hours pay, and that Defendants also failed to timely pay their wages.

159.    These employees also confirmed that Defendants failed to provide them with Notices of Pay Rate and accurate wage statements.

## FLSA COLLECTIVE ACTION ALLEGATIONS

160.    Plaintiffs bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

161.    Plaintiffs seek to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other Restaurant Employees who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

162.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated,

had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and schemes, and were subject to Defendants' practices of failing to compensate Plaintiffs and the FLSA Collective their wages promptly.

163.    As a result of Defendants' pattern and practice of the late payment of wages, Plaintiffs suffered a concrete harm of being deprived of paying for necessities, such as food, rent, utilities, or medical expenses, paying rent and credit card bills on time, and receiving the time value of their wages.

164.    Plaintiffs and the FLSA Collective were also subject to Defendants' practices of: (i) failing to compensate them at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing to compensate Plaintiffs and the FLSA Collective at the federal minimum wage for all hours worked in a workweek.

165.    Defendants were also not entitled to take a tip credit against Plaintiffs' and the FLSA Collective's wages.

166.    Defendants unlawfully misappropriated portions of the gratuities due to Plaintiffs and the FLSA Collective by using them to cover the cost of operational expenses such as for food and supplies, in violation of 29 U.S.C. § 203(m)(2)(B).

167.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

168.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

169.    As a result of Defendants' conduct, they are liable to Plaintiffs and the FLSA

Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

170.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 50 to 60 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

171.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

172.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

173.    Pursuant to FRCP 23, Plaintiffs bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

**A.    Class Definition**

174.    Plaintiffs seek to maintain claims, on behalf of themselves and a class of all other Restaurant Employees who have been employed by Defendants at any time during the full statute of limitations period (the "NYLL Class").

175.    Plaintiffs allege, on behalf of themselves and the NYLL Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay Plaintiffs and the NYLL Class at or above the applicable State minimum wage rate for all hours worked; (ii) failing to compensate Plaintiffs and

the NYLL Class at one and one-half times their regular rate of pay (or the applicable State minimum wage rate) for all hours worked in excess of 40 hours in a workweek; (iii) failing to pay Plaintiffs and the NYLL Class their wages on a timely basis; (iv) failing to provide Notices of Pay Rate; (v) failing to furnish accurate wage statements; (vi) failing to compensate Plaintiffs and the NYLL Class spread of hours pay for shifts in excess of 10 hours in a day; (vii) failing to pay Plaintiffs and the NYLL Class all of their wages owed; (viii) misappropriating tips due to Plaintiffs and the NYLL Class; and (ix) making improper deductions to wages.

176.    Plaintiffs have standing to seek such relief on behalf of the NYLL Class because Defendant's unlawful practices have adversely affected them individually and as a group.

177.    The unlawful practices described herein are part of Defendants' normal course of conduct.

178.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    <u>Numerosity and Impracticability of Joinder</u>**

179.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

180.    While the exact number of the members of the NYLL Class are unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 100 to 120 members of the NYLL Class.

181.    Therefore, the numerosity requirement of FRCP 23(a)(1) is satisfied.

**C.    <u>Common Questions of Law and Fact</u>**

182.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class.

183.    These common questions predominate over any questions only affecting the members of the NYLL Class individually.

184.    Indeed, there are few, if any, purely individual issues in this action.

185.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, without limitation:

(a)    Whether Defendants employed Plaintiffs and the NYLL Class within the meaning of the New York Labor Law;

(b)    Whether Defendants failed to pay Plaintiffs and the NYLL Class at or above the applicable State minimum wage;

(c)    Whether Defendants failed to pay Plaintiffs and the NYLL Class the overtime rate for all hours worked in excess of 40 in a workweek;

(d)    Whether Defendants failed to pay Plaintiffs and the NYLL Class their wages on a timely basis;

(e)    Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Pay Rate;

(f)    Whether Defendants properly provided written notice to all tipped Restaurant Employees, consistent with the requirements of the NYLL;

(g)    Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the NYLL Class;

(h)    Whether Defendants failed to compensate Plaintiffs and the NYLL Class with spread of hours pay or an additional hour of pay at the applicable State minimum wage rate on each day where the length of interval between the beginning and end of workday exceeded 10 hours;

23

(i)      Whether Defendants made unlawful deductions from Plaintiffs' and the NYLL Class' wages;

(j)      Whether Defendants improperly misappropriated portions of the gratuities due to Plaintiffs and the NYLL Class;

(k)      Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof; and

(l)      Whether Plaintiffs and the NYLL Class are entitled to liquidated damages and injunctive relief.

186.    Therefore, the common question requirement of FRCP 23(a)(2) is satisfied.

**D.    Typicality of Claims and Relief Sought**

187.    Plaintiffs' claims are typical of the claims of the NYLL Class members they seek to represent.

188.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

189.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are typical of Defendants' treatment of Restaurant Employees generally, and of the NYLL Class specifically.

190.    Therefore, the typicality requirement of FRCP 23(a)(3) is satisfied.

**E.    Adequacy of Representation**

191.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the NYLL Class members.

192.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent.

193.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously

as they pursue their similar individual claims.

194.    Plaintiffs have retained counsel who are competent, qualified, and experienced in employment class action litigation.

195.    Plaintiffs' counsel are able to meet the demands necessary to litigate a class action of this size and complexity.

196.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a)(4).

**F.    Requirements of FRCP 23(b)(1)**

197.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

198.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs and the NYLL Class.

199.    By filing this First Amended Complaint, Plaintiffs are preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

200.    Therefore, not certifying the NYLL Class would substantially impair and/or impede the remaining members' ability to protect their interests.

**G.    Requirements of Rule 23(b)(2)**

201.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying them all wages owed, minimum and overtime wages, spread of hours pay, timely paid wages, gratuities, making improper wage deductions, and failing to furnish

proper Notices of Pay Rate, Notices of Tip Credit, and/or accurate wage statements.

202.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

203.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact at issue in this action.

204.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the NYLL Class' entitlement to monetary and non-monetary remedies for such wage violations.

205.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

## H.    Requirements of FRCP 23(b)(3)

206.    The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

207.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and those of the NYLL Class.

208.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

209.    This class action will not be difficult to manage for reasons including, without limitation: (i) the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Restaurant Employees during the statutory period); and (ii) the common questions of law and fact described in the paragraphs above.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiffs and the FLSA Collective)*

210.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

211.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

212.    The FLSA requires covered employers, including Defendants, to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

213.    Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

214.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

215.    As a result of Defendants' failure to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

216.    As a result of Defendants' pattern and practice of paying Plaintiffs and the FLSA Collective late, Plaintiffs and the FLSA Collective have suffered concrete harm.

217.    Specifically, Defendants prevented Plaintiffs and the FLSA Collective from, *inter alia*: (i) being able to pay for necessities, such as food, utilities, or medical expenses; (ii) being able to pay rent and credit card bills on time; and/or (iii) receiving the time value of their wages

that Defendants illegally delayed.

218. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

219. Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the FLSA Collective)*

220. Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

221. During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

222. The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay (and not less than one and one-half times the federal minimum wage rate) for all hours worked in excess of 40 hours in a workweek.

223. Plaintiffs and the FLSA Collective, were not exempt from the requirement their employer pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

224. Throughout the full statute of limitations period, Defendants engaged in a policy

and practice of failing to compensate Plaintiffs and the FLSA Collective at the required overtime rate for time spent working in excess of 40 hours in a workweek.

225.    As a result of Defendants' failure to pay overtime compensation to Plaintiffs and the FLSA Collective, Defendants have violated the FLSA and/or applicable regulations thereunder.

226.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective, in accordance with the FLSA and/or applicable regulations thereunder.

227.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective, and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE
#### *(On Behalf of Plaintiffs and the FLSA Collective)*

228.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

229.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

230.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than the federal minimum wage for all hours worked in a workweek.

231.    Plaintiffs and the FLSA Collective were not exempt from the requirement that their employer pay them minimum wages under the FLSA.

232. During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek.

233. As a result of Defendants' failures to compensate Plaintiffs and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

234. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective, in accordance with the FLSA.

235. Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: MISAPPROPRIATION OF TIPS
*(On Behalf of Plaintiffs and the FLSA Collective)*

236. Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

237. 29 U.S.C. § 203(m)(2)(B) prohibits employers from retaining tips received by employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips.

238. Defendants willfully violated the FLSA by taking a portion of Plaintiffs' and the FLSA Collective's tips and failing to distribute tips to them and instead, using them to cover operating expenses and the cost of food and supplies.

239. As a result of Defendants' violations, Plaintiffs and FLSA Collective have suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre-judgement and post-judgement interest.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE
### *(On Behalf of Plaintiffs and the NYLL Class)*

240.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

241.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

242.    The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

243.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

244.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

245.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

246.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

247.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the

NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME WAGES
### *(On Behalf of Plaintiffs and the NYLL Class)*

248.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

249.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

250.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times the applicable State minimum wage rates for all hours worked in excess of 40 hours in a workweek.

251.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

252.    Throughout the full statute of limitations period, Defendants engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times the applicable State minimum wage rates for all hours worked in excess of 40 hours in a workweek.

253.    As a result of Defendants' failure to pay overtime compensation to Plaintiffs and the NYLL Class, Defendants have violated the NYLL and/or applicable regulations thereunder.

254.    Defendants have acted willfully and deliberately in maintaining an intentional

practice of failing to compensate Plaintiffs and the NYLL Class, in accordance with the NYLL.

255.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
### *(On Behalf of Plaintiffs and the NYLL Class)*

256.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

257.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq*., and 650, *et seq*., as well as all applicable regulations thereunder.

258.    The NYLL requires covered employers, including Defendants, to pay Plaintiffs and the NYLL Class all compensation earned no later than seven days after the end of the workweek.

259.    Throughout the statute of limitations period, Defendants engaged in a policy and practice of failing to pay Plaintiffs and the NYLL Class all compensation earned in a particular workweek no later than seven days after the end of the workweek.

260.    As a result of Defendants' pattern and practice of paying Plaintiffs the NYLL Class late, Plaintiffs and the NYLL Class have suffered concrete harm.

261.    Specifically, Defendants prevented Plaintiffs and the NYLL Class from, *inter alia*: (i) being able to pay for necessities, such as food, utilities, or medical expenses; (ii) being able to pay rent and credit card bills on time; and/or (iii) receiving the time value of their wages that Defendants illegally delayed.

262.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE**
*(On Behalf of Plaintiffs and the NYLL Class)*

263.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

264.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

265.    The NYLL requires covered employers, including Defendants, to provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

266.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

267.    Throughout the full statute of limitations period, Defendants engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the NYLL Class.

268.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

269.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the NYLL Class in accordance with the NYLL.

270.    Further, due to Defendants' failure to provide Notices of Pay Rate, Plaintiffs and the NYLL Class have suffered concrete harm.

271.    Specifically, Plaintiffs have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves by taking appropriate action to obtain the payments due to them.

272.    Defendants' failure to provide Plaintiffs and the NYLL Class with Notices of Pay Rate not only hindered Plaintiffs and the NYLL Class from realizing their rights at the time of payment, but also injured them by enabling the actual underpayment and untimely payment of their wages, necessitating this action.

273.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: ACCURATE WAGE STATEMENTS**
*(On Behalf of Plaintiffs and the NYLL Class)*

274.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

275.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations

thereunder.

276.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."  NYLL § 195(3).

277.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with proper wage statements.

278.    Throughout the full statute of limitations period, Defendants engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiffs and the NYLL Class.

279.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

280.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiffs and the NYLL Class in accordance with the NYLL.

281.    Further, due to Defendants' failure to provide wage statements, Plaintiffs and the NYLL Class have suffered concrete harm.

282.    Specifically, Plaintiffs and the NYLL Class have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves by taking appropriate action to obtain the payments due to them.

283.    Defendants' failure to provide Plaintiffs and the NYLL Class with Notices of Pay

Rate not only hindered Plaintiffs and the NYLL Class from realizing their rights at the time of payment, but also injured them by enabling the actual underpayment and untimely payment of their wages, necessitating this action.

284.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: SPREAD OF HOURS PAY**
*(On Behalf of Plaintiffs and the NYLL Class)*

285.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

286.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder, including, without limitation, the Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146-1.1, *et seq*.

287.    The NYLL and/or applicable regulations thereunder require employers, including Defendants, to furnish each of their employees one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's workday, or "spread of hours," exceeds 10 hours.

288.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with spread of hours pay.

289.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide spread of hours pay to Plaintiffs and the NYLL Class.

290.    As a result of Defendants' failure to furnish spread of hours pay to Plaintiffs and the NYLL Class, Defendants have violated, inter alia, the NYLL and/or applicable regulations thereunder.

291.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED
### *(On Behalf of Plaintiffs and the NYLL Class)*

292.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

293.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

294.    The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at their established regular rates of pay for all hours worked under 40 in a workweek and one and one-half times their established regular rates of pay for all hours worked in excess of 40 in a workweek.

295.    Plaintiffs and the NYLL Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked under 40 in a workweek and one and one-half times their established regular rates of pay for all hours worked in excess of 40 in a workweek, during the full statute of limitations period.

296.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked under 40 in a workweek.

297.    Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked in excess of 40 in a workweek.

298.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

299.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

300.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**TWELFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: MISAPPROPRIATION OF TIPS**
*(On Behalf of Plaintiffs and the NYLL Class)*

301.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

302.    NYLL § 196–d and regulations issued thereunder, *see* 12 N.Y.C.R.R. §§ 146-2.14–2.15, prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee.

303.    Defendants willfully violated these provisions by taking a portion Plaintiffs' and the NYLL Class' tips and failing to distribute tips to them, and instead, using them to cover operating expenses and the cost of food and supplies.

304.    As a result of Defendants' willful violation of NYLL § 196-d and New York Department of Labor Regulations, Plaintiffs and the NYLL Class suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and

prejudgment and post-judgment interest.

## THIRTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: UNLAWFUL DEDUCTIONS
### *(On Behalf of Plaintiffs and the NYLL Class)*

305.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

306.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder, including, without limitation, the Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146-1.1, *et seq*.

307.    The NYLL and/or applicable regulations thereunder prohibit employers, including Defendants, from making deductions from Restaurant Employees' wages.

308.    Plaintiffs and the NYLL Class were not exempt from the prohibition against unlawful deductions to their wages.

309.    By the actions described above, Defendants made unlawful deductions from Plaintiffs' and the NYLL Class' wages.

310.    As a result of Defendants' unlawful deductions to Plaintiffs' and the NYLL Class' wages, Defendants have violated, *inter alia*, the NYLL and/or applicable regulations thereunder and as a result, Plaintiffs and the NYLL Class are entitled to recover damages to the greatest extent permitted under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that the Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.      Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiffs as the representatives of the FLSA Collective, and their counsel of record, Faruqi & Faruqi, LLP, as counsel for the FLSA Collective;

F.      Designate Plaintiffs as the representatives of the NYLL Class, and their counsel of record, Faruqi & Faruqi, LLP, as class counsel;

G.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be

41

allowed by law;

I.      Determine the damages sustained by Plaintiffs and NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

J.      Grant Plaintiffs, the FLSA Collective, and the NYLL Class an award of liquidated damages in an amount to be determined at trial;

K.      Grant Plaintiffs, the FLSA Collective, and the NYLL Class an award of reasonable attorneys' fees to the greatest extent permitted by law;

L.      Grant Plaintiffs, the FLSA Collective, and the NYLL Class an award of reasonable costs and expenses that they have incurred in this action, including, without limitation, filing fees;

M.      Grant Plaintiffs, the FLSA Collective, and the NYLL Class all other available damages to the greatest extent permitted by law; and

N.      Grant such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: September 29, 2025              **FARUQI & FARUQI, LLP**


By: */s/ Innessa M. Huot*
Innessa M. Huot
685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com

*Attorneys for Plaintiffs, the*

*Proposed FLSA Collective, and
the Proposed NYLL Class*